**HELVERING, Com'r of Internal Revenue, v. CALIFORNIA OREGON POWER CO.**

**No. 6196.**

United States Court of Appeals for the District of Columbia.

Argued Nov. 7, 1934.
Decided Jan. 7, 1935.

Frank J. Wideman, Sewall Key, Norman D. Keller, Arnold Raum, Robert H. Jackson, and Wm. E. Davis, all of Washington, D. C., for petitioner.

Ellsworth C. Alvord, of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The issue in this case relates to a deduction claimed by the respondent corporation in its income tax return for the year 1926. The deduction was disallowed by the Commissioner of Internal Revenue. Upon appeal the Board of Tax Appeals overruled the decision of the Commissioner and held that the deduction should be granted. The Board did not report its opinion, but referred to its former opinion in a case involving the same issue, to wit, East Ninth Euclid Company, 26 B. T. A. 32, reaffirmed in 27 B. T. A. 1289.

The question involved is stated in the petition for review filed by the Commissioner as follows: "The nature of this controversy is such as to give rise to one question, namely, whether or not when a taxpayer issues its mortgage bonds at a discount, such bonds maturing a number of years after the date of their issuance, and, before the maturity of the bonds, retires them at a premium, leaving unamortized discount and expenses, the retirement be accomplished by using part of the proceeds of a subsequent bond issue, should the unamortized discount and expenses, together with the premium of the prior bond issue, be amortized over the life of the subsequent bond issue."

It appears that the taxpayer corporation in the year 1921 sold $2,000,000 face value of its series A 7½ per cent. twenty-year bonds at a discount of 5 per cent., or $100,000. These bonds were secured by a first and refunding mortgage on certain of taxpayer's properties. Provision was made in the bonds for the retirement of the issue or a substantial part thereof through a sinking fund. The expenses of issuance were $24,043.60. Thus, the total amount of discount and expense was $124,043.60. According to the rule of correct accounting as approved by the department this amount should be amortized or prorated over the life of the bonds so as to disclose the true and correct annual interest which the corporation was paying for the use of the money. And it is in general conceded that if such bonds should be paid before maturity the unabsorbed portion of the discount and expense should be allowed as a deduction in the corporation's return for the year of payment. This method of amortization was adopted by the corporation, and by January 1, 1926, the annual amortization deductions on the prospective twenty-year life of the bonds had reduced the total amount of the discount and expenses to $89,629.97. Prior to that date, $129,700 face amount had been reacquired through a sinking fund, leaving $1,870,300 face amount of the bonds outstanding on January 1, 1926.

On February 1, 1926, the taxpayer issued and sold $3,000,000 face value of its series A 5½ per cent. twenty-year bonds, secured by a new general and refunding mortgage. The entire issue was purchased for investment by another corporation. The net proceeds (after deducting $210,000 discount and $26,153.22 expense) were $2,763,846.78. Pursuant to a call made some time previously, the $1,870,300 face amount of the 7½ per cent. bonds then outstanding

were redeemed on February 1, 1926, at a premium of 10 per cent. The redemption expense was $1,300.27. Accordingly, $2,-058,630.27 of the net proceeds of the new 5½ per cent. bonds were used to retire all of the outstanding 7½ per cent. bonds.

The taxpayer in its return for the year 1926 claimed a deduction for the amount of the unabsorbed discount and expense and the retirement premium and expense on the 7½ per cent. bonds which were retired in that year. The Commissioner refused to allow this deduction, but upon appeal the Board of Tax Appeals overruled the decision of the Commissioner and held that the deduction was allowable.

We think that the Board's ruling was correct. In Regulations 69, issued under the Revenue Act of 1926, article 545 reads in part as follows: "(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. (b) If thereafter the corporation purchases and retires any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year."

There are identical provisions in prior and subsequent regulations promulgated under the Revenue Acts of 1916, 1917, 1918, 1921, 1924, 1928, and 1932 (Reg. 33, art. 152; Reg. 45, art. 544; Reg. 62, art. 545; Reg. 65, art. 545; Reg. 74, art. 68; Reg. 77, art. 68).

While it is true that article 545, supra, does not, in terms, provide for issuance expense and retirement expense, these items, like discount and premium, are clearly part of the cost of capital, and the same principle which requires the recovery of discount by amortization and charge-off in the year of retirement applies likewise to expense.

It is claimed by the taxpayer that inasmuch as the 7½ per cent. bonds aforesaid were purchased and retired by the taxpayer in the year 1926 at a price in excess of the issuing price plus the discount already deducted, the excess of the purchase price over the issuing price plus the discount already deducted was a deductible expense for the taxable year 1926.

On the other hand, it is contended by the Commissioner that inasmuch as the first bonds were paid from the proceeds of a subsequent issue of bonds, the two issues were so interrelated that they must be treated as a unit, and that the loss by way of unabsorbed discount and expense at the time of the payment of the first bonds should be amortized over the life of the later bonds, instead of allowing it as a deduction for the year 1926. Accordingly, the question involved in this case is not whether a deduction for the loss should be allowed, but when it should be allowed; it being claimed by the taxpayer that the deduction should be allowed in the year 1926, and by the Commissioner that it should be amortized or prorated over the life of the subsequent issue of bonds, the proceeds of which were used to pay the prior bonds.

In our opinion, however, the two bond issues were not interrelated in any legal sense, but were in fact substantially separate transactions and should be so treated. The mere fact that funds were obtained by the corporation by means of the sale of the second bonds with which to pay the first bonds does not constitute the two several transactions as a unit. The regulation which provides for the deduction in the case of the retirement of bonds under such circumstances contains no exception in cases where the funds for such purpose were obtained by the sale of a subsequent issue of bonds, and the courts cannot engraft such an exception upon the law.

The same issue was involved in San Joaquin Light & Power Corporation v. McLaughlin (C. C. A.) 65 F.(2d) 677, 679, wherein, after referring to article 545, Regulations 62, supra, it is said: "The rule of the Treasury Department and the ordinary system of accounting as well, requires that each bond issue be treated as separate and distinct and that consequently when the bond issue is paid off the unamortized amount of discount which had been spread over the life of the bond is deemed paid at the time of the payment of the bond if it is redeemed at par, as in the case at bar."

In East Ninth Euclid Company, 27 B. T. A. 1289, 1290, it is said by the Board: "It was then decided, on the facts of the case, it appearing that the two bond issues were wholly separate, there being no exchange or substitution of bonds of the new for those of the old issue, petitioner's right to claim a deduction for unamortized bond

discount matured when the old bond issue was retired. Consequently respondent correctly declined to allow the deduction in a subsequent year."

In our opinion the decision of the Board of Tax Appeals in the present case was correct, and it is hereby affirmed.