GREAT WESTERN POWER COMPANY OF CALI-
FORNIA *v.* COMMISSIONER OF INTERNAL
REVENUE.

No. 525. Argued March 5, 1936.—Decided March 16, 1936.

*Mr. Thomas R. Dempsey,* with whom *Mr. A. Calder
Mackay* was on the brief, for petitioner.

*Mr. John MacC. Hudson,* with whom *Solicitor General
Reed, Assistant Attorney General Wideman,* and *Mr.
Sewall Key* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the
Court.

The parties disagree as to petitioner's right to deduct
from gross income for 1924 unamortized discount, pre-
miums, and expenses paid and incurred in that year in
connection with the retirement of certain bonds. The
petitioner took the deduction in its income tax return.

The respondent disallowed it and determined a deficiency. The petitioner appealed to the Board of Tax Appeals which held the deduction proper.[1] The Circuit Court of Appeals reversed the Board's decision in part.[2] We granted the writ to resolve a conflict.[3]

March 1, 1919, the company executed a mortgage securing four series of bonds, one of which was designated "Series B 7%." February 1, 1921, the company executed another mortgage, securing bonds known as "General Lien Convertible 8% Gold Bonds," and thereby covenanted to deposit and pledge with the trustee Series B 7's equal in par value to the General Lien 8's at any time outstanding. The indenture provided that when this should be accomplished the debtor should have the right to redeem the General 8's at 105 and accrued interest, the holders to have the option to receive cash or Series B bonds, of equal face value, plus five per cent. in cash. The General Lien 8's were issued at a discount of $150,-000 and an expense of $22,283.54. Prior to December 31, 1923, certain General Lien 8's had been redeemed for cash and the then unamortized discount and expense allocable to the bonds retired had been charged off in the year of retirement. May 8, 1924, the company called the remaining outstanding General Lien 8's for redemption August 1, 1924. The holders of $2,354,000 face value exercised the option to exchange for Series B 7's at par and a cash premium of five per cent. The total premium paid to them was $117,725 and the expense of the conversion was $1,461.05. The unamortized discount and expense of issuance in respect of the General Lien 8's thus exchanged, at the date of exchange, was $126,176.97. For the remaining General Lien 8's, which were not ex-

[1] 30 B. T. A. 503.

[2] 79 F. (2d) 94.

[3] *San Joaquin L. & P. Corp.* v. *McLaughlin, Collector,* 65 F. (2d) 677.

changed for Series B 7's, cash was paid at the rate of 105% of par and the company incurred certain expenses in the transaction. The total of the premium, the expense, and the unamortized discount applicable to all of the bonds redeemed for cash or in exchange for Series B bonds was charged off in 1924 and taken as a deduction from income for that year. The company keeps its accounts on the accrual basis. The Commissioner disallowed the entire deduction, but before the Board he admitted the propriety of so much of it as applied to bonds redeemed for cash. He insisted, however, that as to those retired by exchange of the Series B 7's the discount, premium, and expense should be amortized over the life of the latter. The Board overruled his contention, but the Circuit Court of Appeals sustained it, holding that the items would not be deductible as realized losses until payment or redemption of the Series B bonds, and should be amortized in annual instalments during their term.

Section 234 (a) of the Revenue Act of 1924 [4] directs that in computing the net income of a corporation subject to the tax there shall be allowed as deductions ordinary and necessary expenses paid or incurred during the taxable year in carrying on the business, interest paid or accrued within the year on indebtedness, and losses sustained during the year not compensated by insurance or otherwise. The Treasury promulgated a regulation under the Revenue Act of 1918 covering treatment of discounts and premiums, which, with immaterial changes, has remained in force under all the revenue acts and appears as Art. 545 of Regulations 65 applicable to the Revenue Act of 1924.[5]

---

[4] c. 234, 43 Stat. 253.

[5] "ART. 545. Sale and retirement of corporate bonds.— . . .

"(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or

Although the article does not expressly cover the items in question other than discount and premiums paid at redemption, expense in connection with the issuance of the securities is deductible on the same theory as unamortized discount.[6] It has accordingly been held that where an issue of bonds is retired for cash, whether the cash be obtained by the sale of a new issue or not, the items in question are deductible in the year of retirement.[7]

The question then is whether, upon an exchange of one obligation for another which is to be retired, the transaction is to be viewed as if the retirement were accomplished by the payment of cash. If the retired bonds had not been called, the expense items incurred in connection with their issuance would properly be amortized over the remainder of their life. Here the petitioner substituted a new obligation for the old. The remaining unamortized expenses of issue of the original bonds and the expense of the exchange are both expenses attributable to the issuance of the new bonds and should be treated as a part of the cost of obtaining the loan. They should, accordingly, be

---

amortized over the life of the bonds. (*b*) If thereafter the corporation purchases and retires any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year. (*c*) If, however, the corporation purchases and retires any of such bonds at a price less than the issuing price plus any amount of discount already deducted, the excess of the issuing price plus any amount of discount already deducted (or of the face value minus any amount of discount not yet deducted) over the purchase price is gain or income for the taxable year."

[6] *Helvering* v. *Union Pacific R. Co.*, 293 U. S. 282; *Helvering* v. *California Oregon Power Co.*, 64 App. D. C. 125; 75 F. (2d) 644.

[7] *Helvering* v. *California Oregon Power Co.*, *supra*; *Helvering* v. *Central States Electric Corp.*, 76 F. (2d) 1011; *Helvering* v. *Union Public Service Co.*, 75 F. (2d) 723; T. D. 4603, XIV C. B. 46, p. 3.

amortized annually throughout the term of the bonds delivered in exchange for those retired.

The judgment of the Circuit Court of Appeals is

*Affirmed.*